UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

Jane Doe,

        *Plaintiff*,                                          No. 1:24-cv-8054

        v.

SEAN COMBS, DADDY'S HOUSE RECORDINGS INC.,     **COMPLAINT AND**
CE OPCO, LLC d/b/a COMBS GLOBAL f/k/a               **DEMAND FOR**
COMBS ENTERPRISES LLC, BAD BOY                        **JURY TRIAL**
ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC, MARRIOTT
INTERNATIONAL, INC and ORGANIZATIONAL DOES 1-10.

        *Defendants*.

---------------------------------------------------------X

        Plaintiff Jane Doe ("Plaintiff"), by and through her attorneys, The Buzbee Law Firm, for her Complaint alleges as follows:

## INTRODUCTION

        1.     This case seeks both compensatory and punitive damages for aggravated sexual assault of Plaintiff Jane Doe. The conduct described herein is violent and shockingly typical of Defendant Sean Combs. Aided and enabled by numerous individuals and entities, Sean Combs for many years believed he was above the law. He is not.

        2.     For decades, Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy," a/k/a "PD," and a/k/a "Love") (herein as "Combs") abused, molested, raped, assaulted, threatened and coerced women, men and minors for sexual gratification, to assert dominance, and to conceal his abhorrent conduct. Combs accomplished these acts by and through a criminal enterprise built

on his success as a rapper, record producer and record executive. Combs is reportedly one of the wealthiest musical artists in the world. Behind the façade of being a three-time Grammy Award winner, discovering and developing multiple famous musical artists, and ranking on Forbes' list of the highest-paid entertainers in the world, there existed something sinister– a dark underbelly of crime, sex trafficking, forced labor, kidnapping, bribery and prostitution. Combs is a menace to society, women, men and children. While his wealth has kept him above consequence for years, Combs now faces the awesome power of the American judicial system and ultimately a jury of his peers who will be asked to punish him for the deplorable conduct described herein.

*Combs' Businesses*

3. Combs' business enterprise is central to the pervasive acts of sexual assault and abuse committed by he, his posse, and his pals during the last decades. Combs operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC, Combs Enterprises and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business portfolio included record labels, a recording studio, an apparel line, an alcoholic spirits promoting business, a marketing agency, talent discovery, a television network and media company.

4. On the surface, each of these businesses served a legitimate purpose related to entertainment, music and other subjects. But in reality, Combs, by and through himself and his agents, employees and contractors, used these businesses to sexually assault, abuse, threaten and coerce hundreds of individuals through sexual *quid pro quo* schemes, as well as to take advantage

of individuals with impunity thinking the victims would never have any recourse. Combs and his agents, employees and contractors, through these Combs Businesses, would tell victims, "this is what it takes to be famous," "what are you willing to do to become a star?," and "perform this sexual act or else" to coerce, cajole, or force the victim into performing a non-consensual sexual act for the gratification of Combs and his cohorts.

5. Members and associates of the Combs Business engaged in (and/or attempted to engage in), among other activities, sex trafficking, forced labor, interstate transportation for the purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

6. The Combs Business constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Combs.

*Combs' Pervasive History of Sexual Assault and Violence*

7. For years Combs and his businesses engaged in a persistent and pervasive pattern of abuse toward women, men, and minors. This abuse was, at times, verbal, emotional, physical and sexual. As part of his pattern of abuse, Combs manipulated both men and women to participate in highly-orchestrated performances of sexual activity with both commercial sex workers and unsuspecting partygoers. Combs ensured participation from these individuals by, among other things, obtaining and distributing narcotics to them with or without their knowledge, controlling their careers, leveraging his financial support and threatening to cut off the same, and using intimidation, violence, and illicit drugs.

8. Combs, while celebrated for his business acumen and influence in the entertainment world, has often been described in a more troubling light as powerful, manipulative, and problematic. His aggressive tactics, both in business and personal dealings, have drawn criticism,

with many viewing him as someone who leverages his power to intimidate and control. This darker side of Comb's persona has been underscored by the numerous lawsuits and allegations that have surfaced over the years. Despite his undeniable success, his rise to the top is marred by a reputation for being ruthless and manipulative, using his influence in ways that have left a trail of legal and personal controversies including but not limited to the following:

   a. Nightclub Shooting Incident (1999): Combs was embroiled in a high-profile case related to a nightclub shooting in New York, involving his then-girlfriend, Jennifer Lopez, and rapper Shyne. Combs was acquitted of all charges, though the case remains a significant legal event in his career.

   b. Multiple Assault Allegations: Combs has faced several lawsuits related to alleged physical assaults, many of which have been settled out of court.

   c. Business Disputes: Combs has been involved in various business-related legal conflicts, particularly surrounding his Sean John clothing line and other ventures. These disputes often involved contractual disagreements and trademark claims.

   d. Claims by Cassie Ventura: Combs' former girlfriend, Casandra "Cassie" Ventura, filed a lawsuit accusing him of years of physical, emotional, and sexual abuse during their relationship. Cassie alleged repeated instances of assault, coerced sexual acts, and drug use, all contributing to an environment of fear and manipulation.

9. Combs particularly fancied the use of the popular date-rape drug Rohypnol, or GHB, to commit heinous non-consensual acts of sexual violence and rape against countless victims. Combs often would secretly use the drug in an alcoholic beverage served at his parties,

typically in a seemingly innocent glass of champagne or a "lemon drop." Partygoers were forced to consume the alcoholic beverage, containing GHB, either prior to entering or while at Combs' party. There are also allegations of Combs dousing victims in lotions or similar body oils, also laced with GBH, so that the drug would be absorbed through the victim's skin and make it easier to take advantage of, exploit, and assault him or her.

10. In the past year, numerous civil complaints have been filed by plaintiffs who allege that they had been sexually abused by Combs between 1991 and 2009. In November 2023, three lawsuits were filed against Combs under the New York Adult Survivors Act. Cassie Ventura, an artist signed to Bad Boy, sued Combs in New York for rape and physical abuse. She alleged Combs facilitated these acts by and through supplying Ms. Ventura with copious amounts of drugs and urging her to take them, beginning in 2006.

11. Joi Dickerson-Neal also sued Combs in New York, alleging Combs drugged her, sexually assaulted her and secretly recorded the assault in 1991.

12. Liza Gardner, whom Combs met at an event hosted by a record label affiliated with Bad Boy, sued him for raping her and a friend in 1990 or 1991 when she was only 16.

13. In December 2023, an anonymous Plaintiff sued Combs in New York for drugging and gang-raping her in 2003 when she was only seventeen years old. This victim alleged that employees and business associates of Combs, through their affiliation with Bad Boy enterprise, lured her to Combs' home where Combs then raped her.

14. In February 2024, Rodney "Lil Rod" Jones, one of Combs' former producers, sued Combs for forcing him to engage in unwanted sex acts and sex trafficking, among other allegations. Mr. Jones alleged that Combs regularly drugged others, including minors, by giving

them drugs laced with ecstasy (MDMA) and other date rape drugs. Mr. Jones alleged that Combs in fact drugged him as well in order to commit acts of sexual assault.

15. In May 2024, former model Crystal McKinney and April Lampros sued Combs. Ms. McKinney alleged that Combs drugged and sexually assaulted her at his recording studio in 2003. Mimicking what has now become a known pattern, Combs promised Ms. McKinney to help her with her modeling career in exchange for engaging in sexual conduct with him. Ms. Lampros, an intern at Arista Records, which was an owner of Bad Boy, also sued Combs in May 2024 in New York County Supreme Court for raping her on multiple occasions, secretly filming these acts, and showing the recordings to multiple people. Ms. Lampros also alleges that Combs ordered her to take drugs on one occasion before he raped her.

16. In July 2024, former adult film star Adria English – who was employed by Combs as an entertainer at his infamous White Parties that brought together the biggest names in the music and entertainment industries – sued Combs in the Southern District of New York for sex trafficking, alleging that he required her to consume drinks laced with ecstasy and secretly recorded sexual acts.

17. In September 2024, singer and songwriter Dawn Angelique Richard also sued Combs. Richard was employed by Combs as part of the girl group Danity Kane, formed by Combs, and later as a key member of Combs' band Diddy – Dirty Money. She sued Combs in New York for sexual assault, false imprisonment, and for subjecting her to hostile working conditions due to her gender, including degrading comments and threats. Ms. Richard has alleged that Combs regularly supplied others including minors with copious amounts of drugs and alcohol, and subjected them to sexual acts while they were sedated and/or unconscious due to the drugs and alcohol.

18. In September 2024, a federal grand jury in Manhattan indicted Combs and charged him with sex trafficking, racketeering and the "creation of a criminal enterprise in which he abused, threatened and coerced women and others around him to fulfill his sexual desires, protect his reputation and conceal his conduct." *See United States of America v. Sean Combs, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love,"* Index No. 24 Crim. 542, Indictment (SDNY), at ¶ 1. The indictment explains that Combs' abuse of women and minors was enabled by "the employees, resources and influence of the multi-faceted business empire that he led and controlled – creating a criminal enterprise whose members and associates engaged in, and attempted to engage in, among other crimes, sex-trafficking, forced labor, kidnapping, arson, bribery and obstruction of justice."

19. Combs' long history of violence against women unequivocally establishes that his actions are motivated by gender – both men and women. Combs has a profound contempt for women and a desire to dominate both minors and other men. His conduct shows a longstanding practice of denigrating, defeating and attempting to humiliate men, women and children. His practices and desires are different for men, women and children. But his actions are unequivocally motivated by the victims' particular gender and age.

20. Plaintiff's allegations herein substantially mirror Combs' prior conduct as established through criminal indictments and other lawsuits. Through this case, Plaintiff seeks a full measure of justice from a man who thought his power, money and influence rendered him untouchable. Plaintiff joins many other victims by filing this Complaint in hopes their common voice makes it impossible for Combs to assault another person ever again.

21. The conduct complained of in many of the cases to be brought involve others who facilitated, encouraged, or participated in the conduct alleged.

**PARTIES**

22. Plaintiff Jane Doe is a female who resides in Tennessee (the city has been left unpled for anonymity).

23. Defendant Sean Combs is a male who, on information and belief, resides in New York City, through incarceration in the Metropolitan Detention Center in Brooklyn. On information and belief, at all relevant times Combs owned and/or controlled Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Productions LLC, (collectively "Bad Boy"), Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC (all together, the "Combs Corporations"). The facts of Combs' ownership and titles at the Combs Corporations enabled him to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate her into silence after the rape.

24. Defendant CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC ("Combs Global") is a limited liability company incorporated in Delaware that has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. On information and belief, all members of Combs Global are citizens of Delaware, New York, and/or California. On information and belief, Combs Global is an alter ego for Combs and/or a successor in interest to Combs' other corporations and/or was established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. Combs Global currently owns, controls, and/or oversees Bad Boy and Combs' other business ventures in the music, fashion, fragrance, beverage, marketing, film, television, and media industries.

25. As part of his renowned Bad Boy record label and brand, Combs has established several corporate entities under the "Bad Boy" name over the past few decades, including but not limited to Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, and Bad Boy Productions LLC (together, "Bad Boy"). On information and belief, all Bad Boy corporate entities are alter egos for Combs, are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. On information and belief, all active Bad Boy entities are now owned and/or controlled by Combs and/or by Combs Global. Combs used the Bad Boy premises/recording studio and their ownership and titles at Bad Boy to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate her into silence after the rape.

   a. Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Entertainment Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

   b. Defendant Bad Boy Productions Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West

Hollywood, California 90069. Bad Boy Productions Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

c. Defendant Bad Boy Books Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 1440 Broadway, 3rd Floor, New York, New York 10018. Bad Boy Books Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. The CEO listed on public filings is Eddie Norward Jr., with a listed address of 1710 Broadway, New York, New York 10019, the same address listed for Sean Combs in public filings for Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Daddy's House Recordings, Inc.

d. Defendant Bad Boy Records LLC is a Delaware limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Records LLC are citizens of Delaware, New York, and/or California. On information and belief, Bad Boy Records LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Records LLC is now owned and/or controlled by Combs and/or by Combs Global.

e. Defendant Bad Boy Entertainment LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Entertainment LLC are citizens of New York and/or California. Bad Boy Entertainment LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Entertainment LLC is now owned and/or controlled by Bad Boy Entertainment Holdings, Inc. and/or by Combs, and/or by Combs Global.

f. Defendant Bad Boy Productions LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Productions LLC are citizens of New York and/or California. Bad Boy Productions LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Productions LLC is now owned and/or controlled by Combs and/or by Combs Global.

26. Defendant Marriott International Inc. is a domestic business corporation doing business in New York, that on information and belief now has its principal place of business at 7750 Wisconsin Ave., Bethesda, Maryland 20814. Marriot management was well aware of Combs and his activities. Marriot management and other personnel "looked the other way" rather than intervene. Marriot further benefitted and profited from the conduct described herein.

27. Defendants Organizational Does 1-10 are currently unknown entities who were owned by and/or employed Defendant Combs and enabled the commission of the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities by name.

28. Each of the Combs Corporations (a) aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein, (b) are alter egos for Combs, completely dominated by him and used for his personal interests and to engage in wrongdoing which harmed Plaintiff and others, and/or (c) serve or have served as vehicles for Combs to move, dispose of, and/or insulate his assets, including in connection with his criminal activities and to avoid compensating the victims of his many crimes, including Plaintiff.

29. Each of the Marriott entities conspired with and aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein by serving or have served as vehicles for Combs to commit said sexual violence by and through use of Marriott's premise(s), hotel staff and employees and by profiting from such activities committed by Combs.

## JURISDICTION AND VENUE

30. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states, and the amount in controversy exceeds $75,000.

31. This Court has specific personal jurisdiction over Defendants because the acts giving rise to Plaintiff's claims took place in New York State, and because several of the Defendants are domiciled in New York State and/or regularly transact business in New York State.

32. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## JURY DEMAND

33. Plaintiff hereby demands a trial by jury on her claims in this action.

## FACTUAL ALLEGATIONS

34. Combs and his staff regularly invited members of the public to events such as music video shoots, photoshoots, autograph signings, in and around New York City. One such event took place in 2004 across the street from Jane Doe's college campus in Brooklyn, New York. Through Ms. Doe's friends and Combs' accomplices and agents, Ms. Doe received an invitation to Combs' photoshoot. She was nineteen years old at the time. She was flattered and excited to receive such an invitation from an individual of Combs' celebrity and stature.

35. Ms. Doe accompanied her friends to the event and discovered that it was a photoshoot promoting "Da Band," a recording group Combs signed to his record label, Bad Boy Entertainment. At the photoshoot, she and one of her good friends, another freshman living in the dormitory with Ms. Doe, were eventually invited to an after party by Combs' business associates. Before leaving for the party, Ms. Doe had met Combs at the photoshoot. Combs told Ms. Doe and her friend that they should come to his hotel first for a more exclusive party. Ms. Doe and her friend agreed and were taken to a Manhattan area Marriott hotel by a member of Combs' entourage.

36. Upon arriving at the hotel suite, Ms. Doe noticed that there were a dozen people there having drinks and listening to music in a relaxed party environment. While attempting to mingle around the party, Ms. Doe and her friend were suddenly grabbed and taken to a separate room off from the main party. Ms. Doe believed the man taking them to be a security guard, so she went with him. But when she asked him where they were going, he simply told her "You know what you are here for."

37. After taking Ms. Doe and her friend to the bedroom, the security guard left the room and locked the door. The only person in the room besides Ms. Doe and her friend was Combs. Combs gave Ms. Doe and her friend more drinks, then instructed them to imbibe cocaine that he had prepared for use on the coffee table. Ms. Doe did not want to do the cocaine. Combs continued getting gradually more aggressive with the two women and eventually began forcibly touch them without consent. When they resisted, Combs ordered Ms. Doe's friend to perform oral sex on him or else he would have them both killed. Ms. Doe's friend complied as Ms. Doe begged Combs to allow them to leave. He did not agree.

38. Combs soon turned his sights to Ms. Doe and forced her to take her clothes off, again under the threat of violence. Once she was undressed, Combs forced himself on her and began to sexually assault her. Combs fondled, molested, and ultimately raped Ms. Doe, all while she was begging him to stop. Soon, and likely due to Ms. Doe's cries, the door opened and the security guard from earlier came in to ask if everything was alright. Ms. Doe's friend took the opportunity to rush out of the recently locked door. Ms. Doe however, could not move as Mr. Combs was still on top of her.

39. Combs got off of Ms. Doe to talk to the security guard, he left the room but told Ms. Doe to stay otherwise she would be killed. After about half an hour of sitting in the dark room by herself, another security guard came and told her that she could leave. Ms. Doe gathered her things and left immediately and called a taxi back to her dormitory in downtown Brooklyn.

**FIRST CAUSE OF ACTION**
**(Violation of New York City Victims of Gender-Motivated Violence Protection Act)**
**(All Defendants)**

40. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

41. By forcing sexual contact onto Plaintiff, specifically by physically assaulting and then forcibly raping Plaintiff, Defendant Combs committed a "crime of violence motivated by gender" under the Victims of Gender-Motivated Violence Protection Act ("VGMVPA") as defined in New York City Administrative Code § 10-1103.

42. The requirement that the crime of violence be committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender is satisfied because Defendant Combs forced Plaintiff to engage in a sexual interaction without consent.

43. The Combs Business enabled Combs to commit the crime of violence motivated by gender because Combs sexually assaulted Plaintiff at a hotel doing business with the Combs Business. On information and belief, Combs Businesses routinely committed sexual assault and gender-motivated violence, as detailed in other civil lawsuits, to further the business purpose of Combs' enterprise. Given Combs' long- standing pattern and practice of committing sexual violence against women, the Combs Business had and/or should have had knowledge of Combs using such venues for this unlawful conduct, and did nothing to stop it.

44. The Combs Business enabled Combs to commit the crime of violence motivated by gender by failing to, among other things, protect Plaintiff from a known danger and/or have sufficient policies and procedures in place to prevent sexual assault and/or train their employees on identifying and preventing sexual assault. Given long-standing pattern and practice of committing sexual violence against women, including on premises owned and/or operated and/or used by Defendants for business purposes, the Combs Corporations had and/or should have had knowledge that Combs was a danger to Plaintiff, and did nothing to stop Combs.

45. The Combs Business enabled Combs to commit the crime of violence motivated by gender by failing to properly supervise. The Combs Business had knowledge and/or should have

had knowledge of Combs' widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated and/or used for business purposes by Defendants, and did nothing to stop it.

46. The Combs Corporations further enabled Combs to commit the crime of violence motivated by gender by actively placing, maintaining, and/or employing Combs in positions of power and authority, despite the fact that they knew and/or should have known that Combs had a widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants. Combs used his titles and authority conferred by the Combs Business, including as CEO, Founder, and Chairman to facilitate and perpetuate the violent assault on Plaintiff, and to intimidate and force Plaintiff to keep quiet in subsequent years.

47. The Marriott defendants further enabled Combs to commit the crime of violence motivated by gender by turning a willful blind eye to his obvious conduct, including sexual violence against others; facilitating a venue and premise, including but not limited to a hotel room, to Combs and his associates in order to permit him to commit such acts of sexual violence; and profiting from Combs' sexual violence through room rates, room service and other monetary benefits paid by and through Combs and his corporations. There can be no doubt that Combs and his conduct was well known; he routinely had large parties at hotel venues. Numerous people, most of which were not guests at the hotel, would come and go. Many would leave intoxicated and disoriented. Large volumes of alcohol and drugs were consumed. Marriot profited from this conduct, rather than intervene and stop it.

48. On information and belief, Plaintiff alleges that Defendant Organizational Does 1 through 10, inclusive, are other parties not yet identified who have enabled Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

49. Plaintiff alleges the existence of a conspiracy in order to connect the actions of the individual defendants with the actionable, underlying tort of VGMVPA, as the actions described herein were coupled with an agreement between all Defendants as co-conspirators regarding the tort and overt actions in furtherance of that agreement as further described herein.

50. As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial and pursuant to the fee-shifting provision of the statute.

51. This legal action has been commenced within the statutory timeframe provided by the two-year look-back window for VGMVPA claims. *See* New York City Administrative Code § 10-1105.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

   a. Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and suffering, family and social disruption, and other harm, in an amount to be determined at trial;

   b. Awarding punitive damages in an amount to be determined at trial;

   c. Awarding attorneys' fees and costs pursuant to any applicable statute or law;

   d. Awarding pre- and post-judgment interest on all such damages, fees, and/or costs;

  e. Attaching any and all of Defendants' real property and other assets located in the State of New York pursuant to Federal Rule of Civil Procedure 64; and

  f. Awarding such other and further relief as this Court may deem just and proper.

Dated: OCTOBER 23, 2024

        Respectfully submitted,

        **THE BUZBEE LAW FIRM**

        By: */s/ Anthony G. Buzbee*
        Anthony G. Buzbee
        Texas Bar No. 24001820
        tbuzbee@txattorneys.com
        Christopher J. Leavitt
        Texas Bar No. 24053318
        cleavitt@txattorneys.com
        Ryan S. Pigg
        Texas Bar No. 24088227
        rpigg@txattorneys.com
        David C. Fortney
        Texas Bar No. 24068740
        dfortney@txattorneys.com
        Colby Holler
        Texas Bar No. 24126898
        choller@txattorneys.com
        Crystal Del Toro
        Texas Bar No. 24090070
        cdeltoro@txattorneys.com
        J.P. Morgan Chase Tower
        600 Travis, Suite 7500
        Houston, Texas 77002
        Telephone: (713) 223-5393
        Facsimile: (713) 223-5909

        *Attorneys for Plaintiff John Doe*

        -   AND  -

        **AVA LAW GROUP**
        Andrew Van Arsdale
        CA Bar No. 323370
        andrew.vanarsdale@avalaw.com
        3667 Voltaire Street, Ste. 101

San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667

-   AND  -

**CURIS LAW, PLLC**
By:  /s/ *Antigone Curis*
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610