UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

Candice McCrary,

                *Plaintiff*,                         No. 1:24-cv-8054-MKV

        v.

SEAN COMBS, DADDY'S HOUSE RECORDINGS INC.,
CE OPCO, LLC d/b/a COMBS GLOBAL f/k/a
COMBS ENTERPRISES LLC, BAD BOY
ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC.,
BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC, and
ORGANIZATIONAL DOES 1-10,

                *Defendants*.

--------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

**THE BUZBEE LAW FIRM**
David Fortney (*admitted pro hac vice*)
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

**CURIS LAW, PLLC**
Antigone Curis
52 Duane Street, 7th Floor
New York, New York 10007

Plaintiff Candice McCrary ("Plaintiff"), by and through her undersigned counsel The Buzbee Law Firm and Curis Law PLLC, hereby files this Memorandum of Law in Opposition to the Combs Defendants' motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). For the reasons set forth herein, the instant motion should be denied.

## I.     **PRELIMINARY STATEMENT**

This matter is not time-barred. As detailed herein, the Victims of Gender-Motivated Violence Protection Law ("GMVL") opened up the statute of limitations for claims arising from gender-based violence, such as the sexual assault here, allowing previously barred claims to be brought prior to February 28, 2025.  The black letter of the VGMVPL states "[n]otwithstanding any provision of law that imposes a period of limitation to the contrary, a civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022."  N.Y.C. Admin. Code § 10-1105(a). Thus, any claim which had expired under any applicable statute of limitations was revived and permitted to be filed after February 28, 2023 but before March 1, 2025.  Accordingly, Plaintiff's complaint is timely.  Moreover, the GMVL is not preempted by either the Adult Survivor Act ("ASA") or Child Victims Act ("CVA"), as Defendants contend, because neither is a "comprehensive regulatory scheme" or otherwise qualifies as having preemptive effect.

Likewise, the corporate defendants sued here should not be dismissed.  The GMVL's broadly applicable policy of enabling victims of sexual assault to pursue claims against perpetrators and those who enable them is clear.  Moreover, Plaintiff has clearly alleged that defendant Combs used his various businesses as alter egos for the purposes of enabling Combs to

commit precisely the kinds of sexual assaults as the one detailed in the Complaint. Here, Plaintiff was lured into the situation that led to her sexual assault through an event held by Bad Boy Entertainment. It is impossible at this stage of the litigation to determine that no corporate liability can exist. The Combs' Defendants' motion should be denied.

## II.    FACTUAL ALLEGATIONS

Defendant Sean Combs and his staff routinely invited members of the public to events such as music video filming, photoshoots, and autograph signings in and around New York City. In 2004, one such event took place across the street from Plaintiff's college campus in Brooklyn, New York. Through Plaintiff's friends and Combs' accomplices and agents, Plaintiff was invited to Combs' photoshoot. She was nineteen years old at the time. She was overwhelmed by the celebrity of Combs and both flattered and excited to receive an invitation from an individual of Combs' stature.

Plaintiff and her friends attended the event and discovered it was a photoshoot promoting "Da Band," a recording group Combs had signed to his record label, Bad Boy Entertainment. At the photoshoot, Plaintiff and one of her good friends, another freshman living in a dorm with Plaintiff, were eventually invited to an afterparty by Combs' business associates. Before leaving, Plaintiff met Combs at the photoshoot. Combs told Plaintiff and Plaintiff's friend that they should come to his hotel first for a more "exclusive" party. Plaintiff and her friend agreed and were taken to a Manhattan-area Marriott hotel by a member of Combs' entourage.

Upon arriving at the Marriott location, Plaintiff went to a suite at the hotel location. Once she got to the suite, Plaintiff noticed that there were a dozen people or so present having drinks and listening to music in a relaxed environment. While attempting to mingle and meet people at the party, Plaintiff and her friend were suddenly grabbed and taken to a separate room off from the main area. Plaintiff believed the man was a security guard, so she went with the man. When Plaintiff asked the security guard where she and friend were going, the security guard told her "You know what you are here for."

After the security guard took Plaintiff and her friend to the bedroom, the security guard exited and locked the door. The only people inside the room other than Plaintiff and her friend was Combs himself. Combs gave Plaintiff and her friend more drinks, then instructed them to use cocaine that Combs had placed on a coffee table in the room. Combs then began to forcibly touch Plaintiff and her friend without consent. When Plaintiff and her friend resisted, Combs ordered Plaintiff's friend to perform oral sex on him or else he would have Plaintiff and her friend killed.

Combs then directed his attention at Plaintiff and forced her to remove her clothing under the direct threat of violence. Once Plaintiff was undressed, Combs forced himself on her and began to sexually assault her. At this point, Combs fondled, molested and ultimately raped Plaintiff, all the while with Plaintiff begging him to stop. Soon, and likely due to Plaintiff's cries, the door to the room opened and the security guard came in to ask if everything was all right. Plaintiff's friend took the opportunity to rush out of the door of the bedroom. Plaintiff, however, could not move as Combs was still on top of her.

Combs then got off of Plaintiff to talk to the security guard. Plaintiff was told to say in the room, or otherwise she would be killed. After approximately 30 minutes of sitting in the dark room all alone, another security guard entered and informed Plaintiff that she could leave. Plaintiff gathered her belongings and immediately left the room. She called a taxi and returned to her dormitory in Brooklyn.

## III.    LEGAL STANDARD

The Federal Rules of Civil Procedure embrace a very liberal pleading standard.  *See* Fed. R. Civ. P. 8 (General Rules of Pleading).  Under Rule 8, a pleading need only contain a statement of jurisdiction; a short and plain statement of the claim showing the plaintiff is entitled to relief; and a demand for relief sought.  *See* Fed. R. Civ. P. 8(a).

Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the form and sufficiency of a statement of a claim under this liberal pleading rule.  Since the enactment of the Federal Rules, federal courts have developed a well-settled set of principles when reviewing a complaint in response to a motion to dismiss for failure to state a claim under Rule 12(b)(6).  These principles

include:  (1) that the plaintiff's factual allegations contained in the complaint are accepted as true; (2) that the court must construe the complaint liberally in favor of the plaintiff and draw all reasonable inferences in favor of the plaintiff; (3) that the court may not consider matters or information beyond what is stated on the face of the complaint, judicially noticed facts, and any attachments to the complaint; (4) that the complaint must provide notice to the defendant of the plaintiff's claims; and (5) that the court should not dismiss the complaint for failure to state a claim unless it appears <u>beyond doubt</u> that it is impossible for the plaintiff to prove some set of facts in support of a claim which would entitle the plaintiff to relief.

This standard was modified slightly by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcrofl v. Iqbal*, 556 U.S. 662 (2009).  Following these cases, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations that are sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555.  In other words, a plaintiff can no longer stand on the "mere possibility of misconduct;" rather the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *i.e.*, sufficient facts to permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678-79 (quotation and citation omitted).  Determining whether a complaint states a plausible claim for relief is a context-specific undertaking for the court.  *Id*.  ("[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense.").  In performing this duty, the court considers the complaint in its entirety, as well as documents incorporated into the complaint by reference, and matters of judicial notice.  *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).  Under *Twombly* and *Iqbal*, the Combs

Defendants cannot meet the standard required for the Court to grant their motion to dismiss, and the motion must therefore be denied.

## IV.    <u>ARGUMENT</u>

### A.    **Plaintiff's Claims are Not Time-Barred**

Plaintiff's claims are not time-barred because the GMVL opened the statute of limitations for matters otherwise time-barred until March 1, 2025, and Plaintiff filed this action on October 24, 2024, well within that window.

Defendants argue that the Complaint should be dismissed as time-barred on two (2) theories – (1) that the 2022 GMVL amendment did not revive Plaintiff's GMVL claim and, (2) that even if it did, the claim would be preempted by the ASA and the CVA and therefore time-barred because Plaintiff's Complaint was not filed within the windows afforded by either statute. Defendants misconstrue the plain language of the GMVL and seek to apply an overly broad interpretation of preemption laws. Thus, Defendant's motion should be denied.

      *1.    The GMVL clearly allows any and all otherwise time-barred claims to be brought before March 1, 2025.*

First, the language of the GMVL clearly states "[n]otwithstanding any provision of law that imposes a period of limitation to the contrary, any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022." N.Y.C. Admin. Code § 10-1105(a). While the GMVL ordinarily provides a statute of limitations of seven (7) years for violations of the GMVL, the January 2022 amendment specifically carved out a two- and a half-year window for any and all claims that were otherwise time-barred by any other statute of limitations. N.Y. C.P.L.R. § 10-

1105(a).    The amendment, therefore, opened the window for "any civil claim or cause of action . . . that is barred because the applicable period of limitation has expired." *Id.*

Further, as originally enacted, the GMVL provided victims of gender-motivated crimes of violence with a cause of action against only the individual who perpetrated the crime. (See NYC Municipal Code Title 10, Chapter 11, §10-1104, eff. Dec. 19, 2000.) Effective January 2022, the City Council amended §10-1104 to provide "any person claiming to be injured by a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motived by gender has a cause of action against such party." (§10-1104, eff. Jan. 9, 2022.) In the same enactment, the City Council also amended §10-1105, entitled "Limitations," to provide: "any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitations has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022." Taken together, the two amendments (1) expanded liability to non-perpetrator defendants where no liability had previously existed and (2) revived causes of action brought under the statute whose limitations period had already expired.

Defendants' arguments are contrary to the GMVL's primary intention: to make it easier for victims of gender-motivated violence to seek civil remedies in court—not, as Defendants would have it, make it harder. New York City passed the GMVL "[i]n light of the void left by the Supreme Court's decision" in *United States v. Morrison*. N.Y.C. Admin. Code § 8-902. *Morrison* struck down the federal right of action for victims of gender-motivated violence under the Violence Against Women Act (VAWA) (42 U.S.C. § 13981), holding that Congress lacked the authority under the Commerce Clause and the Fourteenth Amendment to pass such a remedy. *United States v. Morrison,* 529 U.S. 598, 627 (2000).

"It is fundamental that in interpreting a statute, the court should attempt to effectuate the intent of the Legislature." *Cadiz-Jones v. Zambretti*, 2002 NY Slip Op 30135[U], *3, 2002 WL 34697795, at *1 (Sup. Ct. NY. Cnty. Apr. 9, 2002) (holding GMVL was intended to apply retroactively) (citing *Patrolmen's Benevolent Assn. v City of New York*, 41 N.Y.2d 205, 208 (1976)). The Council intended the GMVL to make it easier for victims of gender-motivated violence to seek court remedies. *Id.* It intended the same when it passed the 2022 amendment to the law. *See, e.g., City Council H'rg Testimony* (Nov. 29, 2021) at 41 (testimony in support of act's passage describing sexual abuse in 1993); Hr'g Tr. (Nov. 29, 2021) at 129–30 ("In summary, there is no timeline on processing trauma. Not passing this Bill means we would be denying what it means to be fundamentally human and denying the research and the science that it takes some of us longer than other, not only to come forward, but to tell our story."), 131 ("I am here to tell you that a victim doesn't have a set time for when they came come forward. . ... Please pass the amendment to allow the window for justice to be pursued by all victims of gender-motivated violence." (emphasis added)). "Based on an analysis of statutory text and history" it is clear that "the legislative body intended [the GMVL] to apply retroactively." *Cadiz-Jones*, 2002 WL 34697795, at *1.1.  The Complaint is not time barred the claim is valid.

### 2.  ii.  The GMVL is not preempted by the ASA.

Defendants are incorrect that the GMVL's revival statute is preempted by the Child Victims' Act ("CVA") or Adult Survivors' Act ("ASA").  Defendant's notion that these laws command "field preemption" is an extreme expansion of the actual language and intended application of the ASA and the doctrine of field preemption itself.  Field preemption only "prohibits a local government from legislating in a field or area of the law where the legislature has assumed **full regulatory responsibility**." *Doe v. Black*, 23-CV-6418 at 5 (JGLC) (S.D. N.Y.

Sep 27, 2024) (citation omitted) (emphasis added). "[T]he mere fact that a local law may deal with some of the same matters touched upon by state law does not render the local law invalid." *Id*. at 6 (quotations and citations omitted). Here, just one aspect of local law is at issue -- the statute of limitations, not the entire regulatory responsibility of the legislature. The ASA and CVA were intended to expand the statute of limitations, not limit it, which is consistent with the purpose of the GMVL. Likewise, the GMVL is not preempted by the ASA due to "conflict preemption" because the statutes do not conflict – they are actually consistent with one another in providing victims an opportunity to be compensated by those who victimized them. Judge Clarke of the Southern District of New York thoroughly analyzed this issue and found that field preemption did not bar the revival statute, that the ASA and CVA did not indicate an intent to occupy the field, that the ASA and CVA were not a "comprehensive and detailed regulatory scheme," and that conflict preemption did not bar the revival statute. *See Doe v. Black*, No. 23-CV-6418 (JGLC), 2024 U.S. Dist. LEXIS 175929, *6-20 (S.D.N.Y. 2024). Judge Clarke's opinion establishes that there is no basis on which to find preemption of the GMVL's revival window.

**B.    The Corporate Defendants Should Not Be Dismissed**

As shown in section A(1) above, the expansive scope of GMVL's amendment indicates that it should apply retroactively to the Company Defendants. And, further, the Combs Defendants are incorrect that the Complaint does not allege sufficient facts indicating the company defendants' potential liability. When deciding a motion to dismiss pursuant to Rule 12(b)(6), "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether the plaintiff is entitled to offer evidence to support her claims." *Palkovic v. Johnson*, U.S. App. LEXIS 12600, *5 (2d Cir. Jun. 13, 2008). Therefore, in considering Defendant's motion to dismiss, the Court must accept as true all of the factual allegations in the Complaint and draw all inferences in Plaintiff's favor. *Rolon v.*

*Henneman*, 517 F.3d 140, 142 (2d Cir. 2008). Further, the Court's task is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. *Leavitt v. Bear Stearns & Co.*, 340 F.3d 94, 101 (2d Cir. 2007).

Here, the Complaint pleads in detail that Defendant Combs used the various companies he controlled for purposes of accomplishing his ulterior motives of sexual exploitation and assault. Complaint (Dkt. 23) ¶¶ 2-10, 18, 23-29. Moreover, the Complaint pleads that Combs' "business associates" invited a nineteen-year-old woman and her friends to a photoshoot put on by one of Combs' companies, Bad Boy Entertainment. *Id.* ¶¶ 34-35. Other associates there invited Plaintiff to an afterparty. *Id.* ¶ 35. One of Combs' associates drove Plaintiff to a Marriott hotel after the shoot. ¶ *Id.* At the hotel, a security guard employed by Combs or one of his companies grabbed Plaintiff and put her and her friend in a room with Combs, telling her "You know what you are here for." *Id.* ¶ 36.

Each of these "business associates" or presumed employees enabled Combs' abuse and assault of Plaintiff. Bad Boy Entertainment – and potentially other of Combs' companies, given Plaintiff's allegations of how those companies were run, and their purpose – are, or at minimum, *could be* liable to Plaintiff here. She was invited, essentially, to a business event, and then recruited from that business event to another event, attended by largely the same people, *for the purposes of assaulting her.* As Plaintiff pleads, Combs' security guard told her, as he put her into a separate room with Combs, "You know what you are here for." With *so many people* involved *at a corporate-sponsored function* and immediately in its aftermath, it is impossible to say that there cannot be corporate liability here.

Further, several of the Company Defendants attempt to assert a claim that they are not liable due to the fact that they were not in existence at the time of the alleged conduct. However,

they do not take into account the concept and notion of successor liability, which is entirely applicable to the matter at issue. The doctrine of successor liability applies to this case as Company Defendants are responsible for the acts, omissions and liabilities of its predecessors. *See Schumacher v. Richards Shear Company, Inc.* 59 N.Y. 2d 239 (Ct. App. 1983), in which the Court of Appeals held that a successor corporation or entity, and/or an entity which formed as a result of a merger, could be responsible for the liabilities of a predecessor entity. The Court stated, "A corporation may be held liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.

In *Simpson v. Ithaca Gun Co*. LLC 50 A.D. 3d 1475 (4th Dept, 2008), the Court stated that the premise that a successor corporation may be responsible for liabilities of a predecessor corporation is based on the concept that a successor that effectively takes over a company in its entirety should carry the predecessor's liabilities as a concomitant to the benefits it derives from the good will purchased.

Defendants make reference to the fact that in 2004 certain Company Defendants did not exist, insinuating that the companies had no affiliation or relationship with each other. However, their argument is misplaced. Indeed, where a successor purchases all or almost all of the predecessor corporation's assets, or the successor assumes a form nearly identical to that of the predecessor corporation, this may be sufficient to impose liability on the successor. *Burgos v. Pulse Combustion, Inc*., 227 A.D. 2d 295 (1st Dept. 1996). Discovery is needed and essential to ascertain this information.

## V.    <u>CONCLUSION</u>

For the reasons stated herein, Plaintiff respectfully requests that this Court deny the Combs'

Defendants' Motion to Dismiss in its entirety.

Dated: April 22, 2025

            Respectfully submitted,

### CURIS LAW, PLLC

By: *_/s/ Antigone Curis_*

**CURIS LAW, PLLC**
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610

### THE BUZBEE LAW FIRM
David Fortney (*admitted pro hac vice*)
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909