# Exhibit A

2025 WL 1559583
Supreme Court, Appellate Division,
First Department, New York.

S.S. et al., Plaintiffs-Appellants,

v.

The ROCKEFELLER UNIVERSITY HOSPITAL, Defendant-Respondent.

City of New York, Amicus Curiae.

4521
|
Index No. 159929/23
|
Case No. 2024-03637
|
Entered: June 3, 2025

**Attorneys and Law Firms**

Hasapidis Law Offices, Scarsdale (Annette G. Hasapidis of counsel), for appellants.

Cohen & Gresser, LLP, New York (Mark Spatz of counsel), and Ropes & Gray LLP, Washington, DC (Douglas H. Hallward–Driemeier of the bar of the District of Columbia and Commonwealth of Massachusetts, admitted pro hac vice, of counsel), for respondent.

Muriel Goode–Trufant, Corporation Counsel, New York (Jeremy W. Shweder, Richard Dearing and Devin Slack, of counsel), for amicus curiae.

Webber, J.P., Gesmer, Rodriguez, Higgitt, O'Neill Levy, JJ.

**Opinion**

*1 Order, Supreme Court, New York County (Dakota D. Ramseur, J.), entered on or about May 23, 2024, which granted defendant's motion to dismiss the complaint, unanimously affirmed, without costs.

From about 1966 to 1992, defendant hospital employed Dr. Reginald Archibald, a pediatric endocrinologist. The six plaintiffs are men who had been patients at the hospital as young boys, at different times between about 1966 and 1982. All plaintiffs allege that Archibald sexually abused them during medical appointments, while in examination rooms.

Plaintiffs first asserted a claim under the Victims of Gender–Motivated Violence Protection Law (VGM) (Administrative Code of City of N.Y. §§ 10–1104, 10–1105), alleging that Archibald's conduct constituted gender-motivated crimes of violence, and defendant enabled Archibald's commission of those crimes. Plaintiffs also asserted common-law negligence and negligent hiring, retention, and supervision claims.

With respect to plaintiffs' VGM claims, the court properly concluded that the VGM did not apply retroactively (see *Landgraf v. USI Film Prods.,* 511 U.S. 244, 264, 114 S.Ct. 1483, 128 L.Ed.2d 229 [1994]; *Majewski v. Broadalbin–Perth Cent. School Dist.,* 91 N.Y.2d 577, 584, 673 N.Y.S.2d 966, 696 N.E.2d 978 [1998]). The VGM was enacted in 2000, in response to the Supreme Court's decision in *United States v. Morrison,* 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), which struck down the Violence Against Women Act (VAWA) as an unconstitutional exercise of Congressional power (see *Engelman v. Rofe,* 194 A.D.3d 26, 30, 144 N.Y.S.3d 20 [1st Dept. 2021]). The VGM created a civil rights cause of action permitting "any person claiming to be injured by a party who commits ... a crime of violence motivated by gender" to pursue a civil claim "against such party" (Administrative Code § 10–1104). Thus, the VGM is presumed to apply only prospectively, absent a "clear expression of the legislative purpose ... to justify a retroactive application," which may be established "by the literal language of the statute," its context and nature, and its legislative history (*Gleason v. Gleason,* 26 N.Y.2d 28, 36, 308 N.Y.S.2d 347, 256 N.E.2d 513 [1970] [internal quotation marks omitted]; *see also Hasan v. Terrace Acquisitions II, LLC,* 224 A.D.3d 475, 477, 203 N.Y.S.3d 325 [1st Dept. 2024]).

Here, there was no "clear expression" of the City Council "sufficient to show that the legislature contemplated the retroactive impact on substantive rights and intended that extraordinary result" (*Matter of Regina Metro. Co., LLC v. New York State Div. of Hous. & Community Renewal,* 35 N.Y.3d 332, 370–371, 130 N.Y.S.3d 759, 154 N.E.3d 972 [2020]). Although City Council specified that the VGM shall take effect immediately, "the meaning of the phrase is equivocal in an analysis of retroactivity" (*Majewski,* 91 N.Y.2d at 583, 673 N.Y.S.2d 966, 696 N.E.2d 978 [internal quotation marks omitted]; *see also Aguaiza v. Vantage Props., LLC,* 69 A.D.3d 422, 423, 893 N.Y.S.2d 19 [1st Dept. 2010]). Other than the VGM's immediate effect, the statute contains no clear language addressing retroactivity or rebutting the presumption of prospective application.

**\*2** The Committee Report reflects that the VGM was intended to not only fill the gap left by the invalidation of the VAWA but also provide victims of gender-motivated violence with additional relief, as the VGM expressly allowed recovery of attorneys' fees and costs and provided a substantially longer, seven-year statute of limitations (see Administrative Code §§ 10–1104, 10–1105; see also Ericson v. Syracuse Univ., 35 F.Supp.2d 326, 330 [S.D.N.Y.1999]). The City Council also added an explicit presumption that a criminal conviction constituted "conclusive proof of the underlying facts of that crime for purposes of an action brought under this chapter" (Administrative Code § 10–1106). As the VGM created a new, broader cause of action under New York law that expanded upon the protections offered by the VAWA, it did not merely clarify or reaffirm existing law (see Matter of Gleason [Michael Vee, Ltd.], 96 N.Y.2d 117, 122, 726 N.Y.S.2d 45, 749 N.E.2d 724 [2001]).

In 2022, the VGM was amended to permit victims of gender-motivated violence to pursue a cause of action against not only the perpetrator but also any party who "directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender" (the Abettor Provision) (Administrative Code § 10–1104). In addition, the VGM was amended to revive any claims "under this chapter" that were "barred because the applicable period of limitation has expired" (the Revival Provision) (Administrative Code § 10–1105).

The Abettor Provision created an entirely new cause of action imposing civil liability on parties who enabled gender-motivated violence, which did not exist at the time plaintiffs allege the abuse took place, so the presumption against retroactivity applies (see Matter of Regina, 35 N.Y.3d at 370, 130 N.Y.S.3d 759, 154 N.E.3d 972). Moreover, the Abettor Provision does not contain any text reflecting an intention to have retroactive effect (see Gottwald v. Sebert, 40 N.Y.3d 240, 258, 197 N.Y.S.3d 694, 220 N.E.3d 621 [2023]). Although the amendment took effect immediately, the Abettor Provision was added to the VGM over 20 years after it was originally enacted (see Majewski, 91 N.Y.2d at 583, 673 N.Y.S.2d 966, 696 N.E.2d 978). The Abettor Provision rewrote the VGM to broaden liability by permitting plaintiffs to recover from enablers rather than only from perpetrators (see Administrative Code § 10–1102 [City Council's 2000 finding that "victims of gender-motivated violence should have a private right of action against perpetrators of offenses committed against them"]), and the sponsor's testimony does not "offer up any definitive expression that [the Abettor Provision] was intended to have unlimited retrospective application" (Matter of Thomas v. Bethlehem Steel Corp., 63 N.Y.2d 150, 154, 481 N.Y.S.2d 33, 470 N.E.2d 831 [1984]).

As neither the original VGM nor the 2022 amendment apply retroactively, plaintiffs' asserted claims cannot be "brought under" the VGM (see Administrative Code § 10–1105). The court properly determined that the Revival Provision does not revive plaintiffs' VGM claims (see Roldan v. Lewis, 2025 WL 676090, \*10–11, 2025 U.S. Dist LEXIS 37621, \*30–31 [E.D.N.Y.2025]; Bensky v. Indyke, 743 F.Supp.3d 586, 600 [S.D.N.Y.2024]). The Revival Provision also does not revive plaintiffs' common-law negligence and negligent hiring, retention, and supervision claims. Thus, the complaint was properly dismissed.

**All Citations**

--- N.Y.S.3d ----, 2025 WL 1559583, 2025 N.Y. Slip Op. 03290

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.